**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**


**JOHN RUSSELL POWELL,**
                              Plaintiff,


Vs.                                                    Case No:


**HARRY R. MCNESBY**, Sheriff
of Escambia County, Florida; Chief
Deputy Sheriff **LARRY SMITH**,
Deputy Sheriff **REX BLACKBURN**,
**MICHAEL SWINEHART POLITICAL,
INC**., a Georgia for profit corporation
registered to do business in the State
of Florida, **MICHAEL T. SWINEHART**,
in his individual capacity; and **JIMMY R.
CALHOON**, in his individual capacity.
.                                        Defendants
_____/

**<u>PLAINTIFF'S FIRST
AMENDED COMPLAINT</u>**

Plaintiff, JOHN RUSSELL POWELL, by and through his

undersigned counsel, sues Defendants, HARRY R. MCNESBY,

Sheriff of Escambia County and Chief Deputy LARRY SMITH in their

individual capacities, Deputy REX BLACKBURN in his individual

capacities, MICHAEL SWINEHART POLITICAL, INC., MICHAEL T.

SWINEHEART in his individual capacity, and JIMMY R. CALHOON in

his individual capacity, and alleges as follows:

1

## PARTIES

1. This is a civil action seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States and the State of Florida; for retaliating against the Plaintiff for being a candidate in the 2004 Escambia County, Florida political race for the Office of Sheriff.  The court has jurisdiction of this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

2.  The court also has jurisdiction under 28 U.S.C. § 1331 and the laws of the State of Florida.

3.  All of the primary events giving rise to this cause of action occurred in Escambia County, Florida.

4.  This is an action in which the Plaintiff seeks damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees.

5.  Attorney's fees and costs in all civil rights claims are authorized in accordance with 42 U.S.C. § 1988.

6.  The Plaintiff is John Russell Powell, (hereinafter "Plaintiff") who is a resident and citizen of Dothan, Alabama and the United States of America.

7.  Defendant, Harry R. McNesby (hereinafter "McNesby") was Sheriff of Escambia County, Florida and a resident of Escambia County, Florida at all times relevant to this complaint.  McNesby was acting under color of law in his conduct of campaigning for re-election to the Office of Sheriff of Escambia County, Florida and used departmental resources, assets and property during the campaign.

8.  Defendant, Larry Smith (hereinafter "Smith") was the Chief Deputy Sheriff of the Escambia County Sheriff's Office at all times relevant to this complaint.   Smith participated in and supported McNesby in his 2004 re-election campaign for the office of Sheriff in Escambia County, Florida.  Smith was acting under color of law in his conduct of campaigning for McNesby and used departmental resources, assets and property during the campaign.

9.  Defendant, Rex Blackburn (hereinafter "Blackburn") was a Deputy Sheriff of the Escambia County Sheriff's Office at all times relevant to this complaint.  Blackburn participated in and supported McNesby in his 2004 re-election campaign for the office of Sheriff in Escambia County, Florida.  Blackburn was acting under color of law in his conduct of campaigning for McNesby and used departmental resources, assets and property during the campaign.

3

10.    Defendant, Michael Swinehart Political, Inc. (hereinafter "Swinehart Political") is a Georgia for profit corporation registered to do business in the State of Florida and is located in Escambia County, Florida.  Swinehart Political contracted with and agreed to assist McNesby in his 2004 re-election campaign for the office of Sheriff in Escambia County, Florida.

11.   Defendant, Michael T. Swinehart (hereinafter "Swinehart") is the president of Michael Swinehart Political, Inc. and resides in Santa Rosa County, Florida.   Swinehart is an officer of Swinehart Political and facilitated, executed and carried out the contract entered into between McNesby and Swinehart Political for services in support of McNesby's 2004 re-election campaign for the office of Sheriff in Escambia County, Florida.

12.   Defendant, Jimmy R. Calhoon (hereinafter "Calhoon") is a private investigator employed by Swinehart, Swinehart Political and McNesby.  Calhoon's place of residence is believed to be Lexington, South Carolina.   Calhoon was directed by Swinehart, Swinehart Political and McNesby to obtain false and/or derogatory information concerning the Plaintiff and supply that information to all of the

Defendants in their efforts to undermine the Plaintiff's efforts to seek election to the office of Sheriff in Escambia County, Florida.

## **FACTS**

13.   The Plaintiff grew up in and resided within Escambia County, Florida between February, 1964 and July, 1996.

14.   Plaintiff was employed by the Escambia County Sheriff's Office in Escambia County, Florida between December, 1983 and July, 1996.  The Plaintiff was promoted several times while employed as a Deputy Sheriff with the Escambia County Sheriff's Office.  The Plaintiff left the Sheriff's Office in July, 1996 to take a position with the Federal Bureau of Investigation as a Special Agent.

15.   The Plaintiff left the Federal Bureau of Investigation in December, 1999 to become the Police Chief of Hartsville, South Carolina.   McNesby provided a positive recommendation for the Plaintiff's employment to the City of Hartsville, South Carolina for the position of Chief of Police.

16.   The Plaintiff left the Hartsville Police Department in October, 30th, 2001 to become the Chief of Police in Wilson, North Carolina.   McNesby provided a positive recommendation for the

Plaintiff's employment to the City of Wilson, North Carolina for the position of Chief of Police.

17.   The Plaintiff was the Chief of Police of Wilson, North Caroline between October 31st, 2001 and February 1st, 2004.

18.  The Plaintiff made a decision to explore a candidacy for the Office of Sheriff in Escambia County, Florida during the Spring of 2003 at the urging of potential supporters in Escambia County, Florida.

19.   During May, 2003, the Plaintiff returned to Escambia County, Florida for a visit with his father and to meet with supporters who wanted to support him in his candidacy for the Office of Sheriff.

20.  During the same May, 2003 visit, the Plaintiff was informed by a member of the Escambia County Sheriff's Office that the Defendant Smith had threatened to "ruin" the Plaintiff if he continued with his plans to be a candidate for the Office of Sheriff.

21.   McNesby, Smith and Blackburn agreed to create and disseminate false information concerning the Plaintiff in an attempt to dissuade the Plaintiff from running for the office of Escambia County Sheriff. McNesby, Smith and Blackburn used their positions as governmental officials to formulate and devise a plan to obtain false

and derogatory information about the Plaintiff to derail his efforts to become the Sheriff of Escambia County, Florida.

22.   During the same May, 2003 visit, the Plaintiff stopped by the Escambia County Sheriff's Office to visit with friends from his previous employment at the agency.

23.   The Plaintiff, while at the Sheriff's Office, was confronted by McNesby and Smith who told him to leave the Sheriff's Office because of his decision to run for the Office of Sheriff and threatened to have him arrested if he returned to the Sheriff's Office.   McNesby and Smith then informed the Plaintiff that the Wilson, North Carolina city officials would not be pleased if they knew that the Plaintiff was in Escambia County, Florida exploring a candidacy for the Office of Sheriff.   McNesby and Smith were both on duty and acting as government officials during the event described above.

24.   In June, 2003 prior to any formal announcement on the part of the Plaintiff to run for Sheriff in Escambia County, Florida, a ranking officer of the Escambia County Sheriff's Office called the Assistant City Manager, Charles Pittman, of Wilson, North Carolina and asked for an application for the Chief's position of the police department.   When Pittman informed the ranking officer that there

was not a vacancy, the ranking officer then inquired whether the Assistant City Manager knew that the Plaintiff was going to run for Sheriff in Escambia County, Florida.

25.   The Plaintiff pre-qualified his candidacy for the Office of Sheriff in Escambia County, Florida during November, 2003.

26.   The Plaintiff resigned his position as Chief of Police of Wilson, North Carolina on January 31st, 2004 and returned to Escambia County, Florida to begin his political campaign for the Office of Sheriff.

27.   The Plaintiff qualified as a Democratic candidate for the Office of Sheriff in Escambia County, Florida after his return to Escambia County, Florida.

28.   The Plaintiff began campaigning for the Office of Sheriff in Escambia County, Florida on a platform of department reform and qualified leadership.

29.   During July and August, 2004 McNesby and Smith provided a flyer to a minority newspaper in Escambia County, Florida. The flyer informed the newspaper that the Plaintiff had purposefully eliminated supervisory positions held by minority employees while employed as the Chief of Police in Wilson, North Carolina.  A copy of

the flyer is attached as Exhibit "A" that is hereby incorporated into and made a part of this complaint.  The information contained within the flyer was obtained by Calhoon at the direction of Swinehart, Swinehart Political and McNesby.  McNesby and Smith were acting as and portrayed themselves as government officials during the event described above.

30.   McNesby and Smith while delivering the flyer to the newspaper made statements asserting the accuracy of the information contained within the flyer which they knew or should have known were false.  The Plaintiff had actually increased the number of minority employees holding supervisory positions with the Wilson, North Carolina Police Department.

31.   During August, 2004, the Plaintiff while at his campaign headquarters was approached by Blackburn of the Escambia County Sheriff's Office and threatened.  Blackburn while on duty and operating an Escambia County Sheriff's vehicle approached the Plaintiff at the Plaintiff's campaign headquarters.  Blackburn questioned Plaintiff about the Plaintiff's request for an incident report that concerned a family member of Blackburn.  Plaintiff had made a public records request for the incident report believing that the report

would reveal bias within the Escambia County Sheriff's Office. Blackburn informed the Plaintiff that he would get the Plaintiff back and that the Plaintiff had better watch out in the future.

32.   During August, 2004, Blackburn and other yet to be identified officers of the Escambia County Sheriff's Office conducted surveillance of the Plaintiff and his campaign supporters in an effort to intimidate and harass those supporters for their support of the Plaintiff.

33.  The Democratic primary election for the Office of Sheriff of Escambia County, Florida was held on August 31st, 2004.   The Plaintiff was the winner of the primary.

34.  Prior to the early part of September, 2004, McNesby and Smith contracted with, requested or agreed with Swinehart Political and Swinehart that they would try to obtain derogatory and/or false information on the Plaintiff for the purpose of smearing his candidacy for the Office of Sheriff.

35.   During the early part of September, 2004, Swinehart Political and Swinehart pursuant to the contract or agreement above, contracted or hired Calhoon to obtain derogatory information on the Plaintiff.

36.    On/about September 14th, 2004, Calhoon went to the Hartsville Police Department in Hartsville, South Carolina and represented himself as affiliated with or a member of Escambia County government to the Chief of Police of the Hartsville Police Department.   Calhoon informed the Chief that he was doing a background on the Plaintiff for McNesby who was the Sheriff of Escambia County, Florida.

37.    Calhoon, during the meeting described above, told the Chief of the Hartsville Police Department that he was looking for "smut" on the Plaintiff.  The Chief of the Hartsville Police Department then demanded to see official identification from Calhoon that showed he was a member of an Escambia County government agency. Calhoon then admitted to the Chief that he was employed by Swinehart and that Swinehart was involved in McNesby's campaign for re-election.

38.    Calhoon on September 14th, 2004 interviewed two members of the Darlington, South Carolina Police Department in an effort to obtain derogatory information on the Plaintiff.  Calhoon only attempted to interview those individuals whom he believed what have derogatory or false information about the Plaintiff.    Calhoon

interviewed Officer Danny L. Watson and Officer Mark A. Face concerning the Plaintiff and then prepared an alleged interview summary which was critical of the Plaintiff and his performance while being employed as the Chief of Police of Hartsville, South Carolina. The information contained within the alleged summaries is false. The summaries are attached as Exhibit "B" which is hereby incorporated into and made a part of this complaint.

39.   On September 14th, 2004, Calhoon went to the Wilson Police Department and using the same tactics described above asked for records of all employees of the Wilson Police Department that had been disciplined by the Plaintiff while he was the Chief of Police. Calhoon was supplied with a list of names of officers who had been disciplined for misconduct during the time that the Plaintiff was the Chief of the Wilson Police Department.

40.   Between September 14th and 16th, 2004, Calhoon interviewed employees who had been previously disciplined by the Plaintiff during the Plaintiff's tenure as Chief of Police of the Wilson Police Department. Calhoon then created interview summaries of the interviews of these employees that were unsigned and unsworn. The interview summaries alleged moral and criminal violations being

12

committed while the Plaintiff was the Chief of Police of Wilson, North Carolina.   Calhoon knew at the time that he created the interview summaries that the information as stated in the summaries was false. Those interview summaries are attached as Exhibit "C" which is hereby incorporated into and made a part of this complaint.

41.   After September 16th, 2004, Calhoon then furnished the unsigned, non-sworn, and false interview summaries to Swinehart Political and Swinehart who provided them to McNesby and Smith.

42.   McNesby, Smith and Blackburn, together and in concert with Swinehart and Swinehart Political then prepared a package to be disseminated in Escambia County, Florida.   The package was a composite of Exhibits "B" and "C."   Each of the Defendants acting in concert, one with another, made the decision to disseminate the package in an effort to derail the Plaintiff's campaign for Sheriff of Escambia County, Florida.

43.   During the latter part of September, 2004, following the primary elections, the packages described above were placed in employee mail boxes at the Escambia County Sheriff's Office and handed out within the Pensacola community.

13

44.   The package accuses the Plaintiff of criminal acts by accepting "kickbacks" of money from vendors of the Wilson Police Department while employed as the Chief of Police of Wilson, North Carolina.   In addition, the package also accuses the Plaintiff of adultery, federal criminal law violations and unfair labor practices while employed as the Chief of the Wilson Police Department.

45.  The Plaintiff then notified the City Attorney of Wilson, North Carolina of the package that was being disseminated in Escambia County, Florida.

46.   The City Attorney of Wilson, North Carolina then interviewed each of the employees who were alleged to have furnished the unsigned and non-sworn statements contained within Exhibit "C."

47.   Each of the employees who were purported to have furnished the unsigned and non-sworn statements to Calhoon, disavowed having accused the Plaintiff of any criminal or moral violations.   Exhibit "D" is a letter written by one of the individuals interviewed by Calhoon and is hereby incorporated into and made a part of this complaint.

48.   All of the Defendants were notified on October 28th, 2004 that the statements were false.   Despite the notification, the Defendants continued to distribute the package in Escambia County, Florida.

49.   The Wilson Police Department employee that the Plaintiff was alleged to have committed adultery with was Desiree Dampier.

50.   During the early part of September, 2004, a bouquet of flowers was delivered by a Pensacola Florist to the Plaintiff's residence in Escambia County, Florida during the daytime when the Plaintiff's wife was alone in the residence.

51.   The bouquet of flowers was accompanied by a card that stated that the sender was thinking of the Plaintiff, would see him in the "news" and was signed "Love, Desiree."

52.   The Plaintiff and his wife along with a former Escambia County Sheriff's Office employee went to the florist that sent the floral bouquet to the Plaintiff's home.

53.   The Plaintiff was informed by employees at the Florist that the floral bouquet had been paid for in cash and that the transaction was recorded on video.

54.   The Plaintiff together with his wife and the former Escambia County Sheriff's Office employee viewed the video transaction and were able to recognize one of the two individuals who purchased the flowers as a current employee of the Escambia County Sheriff's Office.

55.   The Plaintiff was defeated at the general election on November 2nd, 2004 for the Office of Sheriff of Escambia County, Florida by McNesby.

56.   The Plaintiff in January, 2005 submitted an application the City of Dothan, Alabama for the Chief of Police position.

57.   During February, 2005, McNesby, Smith and Blackburn sent the materials contained in Exhibit "B" and "C" to the City Manager and each of the City Councilman for Dothan, Alabama.

58.   During February, 2005 and continuing for a period of months, McNesby, Smith and Blackburn continued to send false, and derogatory material to news media in the Dothan, Alabama area alleging that the Plaintiff had committed criminal and moral violations that rendered him unfit to fill the Chief of Police position in Dothan, Alabama.

59.  On May 15th, 2005, the Plaintiff was hired as the Chief of Police of the Dothan Police Department by the City Manager with the approval of the City Council.

60.   After the Plaintiff's appointment as Chief of Police of Dothan, Alabama, the materials contained within Exhibit "B" and "C" were sent to employees of the Dothan Police Department by McNesby, Smith and Blackburn or their agents in an attempt to undermine the Plaintiff's performance as Chief of Police.

61.  All of the actions described in paragraphs 57, 58 and 60 were done to harass and intimidate the Plaintiff in an effort to dissuade him from running against McNesby in the next general election.

62.   As a result of all of the actions described above, the Plaintiff did not run for election as the Sheriff of Escambia County, Florida during 2008.

**Count I**
(Civil Rights Violation – First Amendment)

63.  The Plaintiff incorporates paragraphs six through sixty two (6-62) above.

64.  The Defendants individually and collectively engaged in on-going conduct to harass and intimidate the Plaintiff in his candidacy for the Office of Sheriff in Escambia County, Florida.

65.  The Plaintiff was a private citizen at the time he made the decision to run for election to the Office of Sheriff in Escambia County, Florida.

66.  The acts of the Defendants, individually and collectively, resulted in actual harassment and intimidation of the Plaintiff and his supporters during his candidacy for the Office of Sheriff in Escambia County, Florida.

67.  The Plaintiff's decision to run for election to the Office of Sheriff in Escambia County, Florida was constitutionally protected activity under the First Amendment to the Constitution of the United States of America.

68.  The actions of the Defendants, individually and collectively, adversely affected the Plaintiff's First Amendment exercise of running for election as Sheriff of Escambia County, Florida.

69.  The actions of the Defendants, individually and collectively, adversely affected the Plaintiff's decision to run again for election as Sheriff of Escambia County, Florida.

70.  The actions of the Defendants, individually and collectively, that are described above are actions that would deter a person of ordinary firmness from the exercise of First Amendment rights in seeking elected political office.

71.  The Defendants knew or should have known that their actions described above were violations of clearly established law and in violation of the First and Fourteenth Amendment rights of the Plaintiff and that their actions were in reckless and callous disregard to those rights.

**WHEREFORE**, Plaintiff, JOHN RUSSELL POWELL demands judgment against the Defendants, for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against McNesby, Smith, Blackburn, Calhoon Swinehart Political and Swinehart for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

### Count II
(Civil Rights Violation – Conspiracy)

72.  The Plaintiff incorporates paragraphs six through sixty two (6-62) above.

73.  Each of the Defendants agreed with one or more of the other Defendants to engage in a pattern of harassment and intimidation directed against the Plaintiff for the Plaintiff's decision to seek election to the Office of Sheriff in Escambia County, Florida.

74.  Each of the Defendants agreed with one or more of the other Defendants to engage in the overt acts described above in a pattern of harassment and intimidation directed toward the Plaintiff in retaliation for his decision to seek election to the Office of Sheriff in Escambia County, Florida.

75.  At the time of the agreement each of the Defendants knew or should have known that such conduct directed toward the Plaintiff was a violation of his constitutional rights under the First, and Fourteenth Amendments to the Constitution of the United States of America.

76.  McNesby, Smith and Blackburn acted under color of state law in that they used the positions as government officials and resources, assets and property of the Escambia County Sheriff's Office in committing the acts described above.

77.  The overt acts by the Defendants in concert with one or more of the other Defendants described above were acts that were in

reckless and callous disregard of the Plaintiff's First and Fourteenth Amendment rights under the Constitution of the United States for the Plaintiff's decision to seek election to the Office of Sheriff in Escambia County, Florida.

**WHEREFORE**, Plaintiff, JOHN RUSSELL POWELL demands judgment against the Defendants, for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against McNesby, Smith, Blackburn, Calhoon Swinehart Political and Swinehart, for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

**COUNT III**
(Civil Rights – Substantive Due Process)
(McNesby, Smith & Blackburn)

78.  The Plaintiff incorporates paragraphs six through sixty two (6-62) above.

79.   McNesby, Smith and Blackburn and other yet to be identified individuals acting as agents of these Defendants agreed to order and have delivered a bouquet of flowers to the Plaintiff's home with a note alleging that they were ordered and paid for by a woman

whom the Defendants had previous alleged was involved in an adulterous affair with the Plaintiff.

80.  Each of the Defendants knew that the Plaintiff was married and that his wife worked nights and would be home alone during the day.  The flowers were delivered during the day while the Plaintiff's wife was home.

81.  Each of the Defendants knew or should have known at the time the flowers were ordered and delivered to the Plaintiff's home that the Plaintiff's wife knew of the allegations alleging adultery on the part of the Plaintiff.

82.  The Defendants order and had delivered the flower bouquet to retaliate against the Plaintiff for his decision to run for the Office of Sheriff of Escambia County, Florida.

83.  The Defendants knew or should have known that such conduct was a violation of the Plaintiff's right to privacy in his family and was done in callous and reckless disregard for those rights.

83.  This act on the part of the Defendants was an act that violated the Plaintiff's substantive due process rights under the Fourteenth Amendment to the Constitution of the United States.

**WHEREFORE**, Plaintiff, JOHN RUSSELL POWELL demands judgment against McNesby, Smith and Blackburn for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against McNesby, Smith, and Blackburn for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

### COUNT IV
(Civil Rights – Procedural Due Process)
(McNesby, Smith & Blackburn)

84. The Plaintiff incorporates paragraphs six through sixty two (6-62) above.

85. McNesby, Smith, Blackburn and other yet to be identified individuals acting as agents of these Defendants agreed to and did deliver and/or disseminate the material contained in Exhibits "B" and "C" to officials of the City of Dothan, Alabama.

86. The Defendants disseminated this material as government officials and utilized the assets, resources and property of the Escambia County, Sheriff's office to facilitate the dissemination.

23

87.   The Defendants disseminated this material to derail and interfere with the Plaintiff's efforts to obtain employment as the Chief of Police of Dothan, Alabama.

88.   The Defendants or their agents disseminated this material to members of the Dothan Police Department after the Plaintiff was hired as Chief of Police in an effort to interfere with the Plaintiff's ability to supervise and operate the Dothan Police Department.

89.   The Defendants or their agents disseminated the material in retaliation for the Plaintiff having previously run for Sheriff of Escambia County, Florida against McNesby who was the incumbent Sheriff.

90.   The Defendants knew or should have known that the Plaintiff had a liberty interest in his reputation and his right to apply for job opportunities as a Chief of Police.  The actions of the Defendants were actions that the Defendants knew or should have known would interfere with job opportunities for the Plaintiff and were done in violation of clearly established law and in reckless and callous disregard for the Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.

**WHEREFORE**, Plaintiff, JOHN RUSSELL POWELL demands judgment against McNesby, Smith and Blackburn for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against McNesby, Smith, and Blackburn for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

**COUNT V**
(Defamation)
(McNesby, Smith & Blackburn)

91. The Plaintiff incorporates paragraphs six through sixty two (6-62) above.

92.   McNesby, Smith and Blackburn published false and defamatory statements concerning the Plaintiff that is attached as Exhibit "B" and "C" in the latter part of 2005, 2006 and 2007 from Escambia County, Florida to elected officials, police department officials and media outlets in the Dothan, Alabama area.

93.  McNesby, Smith and Blackburn made the publication of the defamatory statements intentionally or negligently, knowing at the time that they made the statements that the statements were false.

94.   McNesby, Smith, and Blackburn made the statements in retaliation against the Plaintiff for qualifying as a candidate for the office of Sheriff of Escambia County, Florida in 2004.

95.   The Plaintiff's reputation in the community in which he lives and works has been harmed by the publication of the defamatory statements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants McNesby, Smith and Blackburn in their individual capacities for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against McNesby, Smith, and Blackburn individually for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

## JURY DEMAND

The Plaintiff demands a jury trial on all such issues triable before a jury.

## SUBSEQUENT AMENDMENT

The Plaintiff moves this Honorable court to allow amendment of this complaint to add additional Defendants and counts as discovery is accomplished.

Done this 18th day of November, 2008 in Pensacola, Escambia County, Florida.

Respectfully submitted,


_____/s/ *James R. Murray*_____
James R. Murray
James R. Murray, P.A.
420 East Pine Avenue
Crestview, FL 32536
850 682-6165
Fla. Bar No: 0299162
Attorneys for the Plaintiffs


Eric D. Stevenson
Whibbs, Rayboun & Stone
105 E. Gregory Square
Pensacola, FL 32502
850 434-5395
Fla. Bar No: 144495
Attorneys for the Plaintiffs


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing motion has been served on Counsel of record by CM/ECF electronic filing this 18th day of November, 2008.

_____/s/ *James R. Murray*_____
James R. Murray