JOHN RUSSELL POWELL,

      Plaintiff,

vs.                                    CASE NO.: 3:08-CV-00449

HARRY R. MCNESBY, Sheriff
of Escambia County, Florida; Chief
Deputy Sheriff LARRY SMITH,
Deputy Sheriff REX BLACKBURN,
MICHAEL SWINEHART POLITICAL,
INC., a Georgia for profit corporation
registered to do business in the State
of Florida MICHAEL T. SWINEHART,
in his individual capacity; and JIMMY R.
CAHOON, in his individual capacity,

      Defendants.
_____/

### MOTION TO DISMISS AMENDED COMPLAINT OF DEFENDANTS McNESBY, SMITH AND BLACKBURN WITH INCORPORATED MEMORANDUM OF LAW AND CERTIFICATE OF COMPLIANCE

Defendants, McNESBY, SMITH AND BLACKBURN, by and through undersigned

counsel, move to dismiss the amended complaint of the Plaintiff as follows:

**1.**      **COUNT I: FIRST AMENDMENT:**

**a.**      **Plaintiff's First Amendment claim fails to state a cause of action due to Plaintiff's status as a political candidate.**

The crux of Plaintiff's amended complaint is that during the course of Plaintiff's

campaign as he sought election to the office of Sheriff, his political opponent, Sheriff

McNesby, and those employed by him, sought to discredit him and his candidacy by

conducting an investigation regarding his employment history and then disseminating the

information obtained as a result (Amended complaint, ¶¶ 29, 34 – 44, 57 – 58). Plaintiff further alleged other efforts were made by Defendants to obtain information regarding the Plaintiff during the course of the campaign (Amended complaint, ¶ 32), had other contact with the Plaintiff not related to the dissemination of information (Amended complaint, ¶¶ 22 & 23) and that other persons sent flowers to Plaintiff's home. (Amended complaint, ¶¶ 50 – 54) Plaintiff asserts that this conduct on the part of Defendants or other persons caused Plaintiff to not run for the office of Sheriff in 2008, instead remaining in his position as Chief of Police for the City of Dothan, Alabama.

The Supreme Court and other courts have repeatedly recognized the need for a free and open exchange of information and ideas during the course of a political campaign. The courts have, as a result, recognized the First Amendment rights of those involved in that process to be permitted to offer a wide range of comments and activities designed for that purpose. This includes comments regarding any information relevant to one's fitness for office. The fact that the comments might also reflect on the candidate personally does not remove them from the protections of the First Amendment. This is precisely the type of information and comments that provide the basis for the claim of the Plaintiff in this case.

In Monitor Patriot Co. v. Roy, 401 U.S. 265 (1971), the Court addressed a libel judgment against a newspaper for a publication characterizing plaintiff senatorial candidate as a 'former small-time bootlegger.' In finding the publication to be protected by the First Amendment, the Court first noted that the same standards applicable to public officials applied to candidates for public office, stating at 410 U.S. pages 271 - 272:

> … publications concerning candidates must be accorded at least as much
> protection under the First and Fourteenth Amendments as those

concerning occupants of public office. That New York Times itself was intended to apply to candidates, in spite of the use of the more restricted 'public official' terminology, is readily apparent from that opinion's text and citations to case law.  And if it be conceded that the First Amendment was 'fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people,'Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498, then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.

Having established the applicability of the First Amendment to statements made

with regard to candidates for public office the Court then stated at page 273 - 276:

The respondent argues that under New York Times a plaintiff has a special burden of proof only as to libels 'relating to official conduct,' that for a candidate 'official conduct' means 'conduct relevant to fitness for office,' and that the public-private issue is one of fact for the jury. In our view, however, the syllogistic manipulation of distinctions between 'private sectors' and 'public sectors,' or matters of fact and matters of law, is of little utility in resolving questions of First Amendment protection.

***

'Of course, any criticism of the manner in which a public official performs his duties will tend to affect his private, as well as his public, reputation. The New York Times rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.'379 U.S., at 76-77, 85 S.Ct., at 217. (quoting from Garrison v. Louisiana)

***

The considerations that led us thus to reformulate the 'official conduct' rule of New York Times in terms of 'anything which might touch on an official's fitness for office' apply with special force to the case of the candidate. Indeed, whatever vitality the 'official conduct' concept may retain with regard to occupants of public office, cf. Garrison, supra, 379 U.S., at 72 n. 8, 85 S.Ct., at 215, it is clearly of little applicability in the context of an election campaign. The principal activity of a candidate in our political system, his 'office,' so to speak, consists in putting before the voters every conceivable aspect of his public and private life that he thinks

may lead the electorate to gain a good impression of him. A candidate who, for example, seeks to further his cause through the prominent display of his wife and children can hardly argue that his qualities as a husband or father remain of 'purely private' concern. And the candidate who vaunts his spotless record and sterling integrity cannot convincingly cry 'Foul!' when an opponent or an industrious reporter attempts to demonstrate the contrary. Any test adequate to safeguard First Amendment guarantees in this area must go far beyond the customary meaning of the phrase 'official conduct.'

\*\*\*

But under our system of government, we have chosen to afford protection even to 'opinions that we loathe and believe to be fraught with death,' Abrams v. United States, 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (Holmes, J., dissenting). A community that imposed legal liability on all statements in a political campaign deemed 'unreasonable' by a jury would have abandoned the First Amendment as we know it.

This is a principle repeatedly expressed by the courts in dealing with claims of public officials or political candidates that their opponents have unfairly campaigned. Beginning with New York Times Co. v. Sullivan, 376 U.S. 254, 269-70 (1964), it has been recognized that criticism of public officials lies at the very core of speech protected by the First Amendment. In New York Times, the Court stated this country enjoys "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. at 269-70.

Following this lead, the court in Colson v. Grohman, 174 F. 3d 498 (5th Cir. 1999), affirmed a summary judgment granted in favor of a public official despite a campaign of character attacks and other accusations, stating: "Even viewing the summary judgment evidence in the light most favorable to Colson, the defendants' allegedly retaliatory crusade amounted to no more than the sort of steady stream of false accusations and vehement criticism that any politician must expect to endure." See also,

<u>Garrison v. Louisiana</u>, 379 U.S. 64, 73 - 74 (1964) ("Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth. … Moreover, '(i) n the case of charges against a popular political figure * * * it may be almost impossible to show freedom from ill-will or selfish political motives.')

In essence, the amended complaint and cause of action asserted by the Plaintiff seeks to or has the result of accomplishing two things, both of which are repugnant to the political system this country operates under. First, it seeks to restrict the First Amendment rights of the Defendants to engage in the type of free flow of ideas and opinions regarding political candidates and their qualifications. Second, it seeks to have the courts act as the "campaign police" to govern the actions and statements of opposing political candidates. One can only imagine the havoc on the court system and the political system that will be wreaked if every allegation or misstatement or stretching of the truth will be subject to judicial review. It takes only a cursory review of a "fact check" website to see how many times political candidates misstate an opponents position on an issue or action taken on an issue to see how often politicians misstep in this regard. However, it is not the courts that are designed to govern this process, but the electorate.

As stated in <u>Block v. Marino,</u> 819 F. Supp. 349 (S.D.N.Y. 1993):

> Political party leaders have no juridically enforceable duty to speak wisely or accurately during campaigns. Our legal and political system leaves shortcomings in that regard to the memory and vengeance of the electorate.

In <u>Eaton v. Meneley</u>, 379 F.3d 949 (10th Cir. 2004), the court similarly recognized

the latitude allowed in political debates and the role of the political process in sorting out

truth from fiction:

> Our case law recognizes that the nature of political debate is rough and tumble. Plaintiffs in public debates are expected to cure most misperceptions about themselves through their own speech and debate. For example, in the case of *Phelan v. Laramie County Community College Board of Trustees,* 235 F.3d 1243 (10th Cir.2000), we held that a member of a college board could not sustain an action for alleged violation of her First Amendment rights when the Board publicly censured her for campaigning against its decision on an issue because both parties remained free to express their views. *Id.* at 1248. Even in the context of that First Amendment retaliation case, we wrote that "injury to one's reputation is not enough to defeat constitutional interests in furthering 'uninhibited, robust' debate on public issues." *Id.* at 1248 (citation omitted).

Under these circumstances and the above referenced case law, it is

apparent that the allegations of Plaintiff's amended complaint cannot state a cause

of action. As a political candidate, Plaintiff must necessarily subject himself to

the type of investigation and comment on his past, be it personal or professional,

and cannot, after the fact, seek to now claim a violation of his rights under the

First Amendment. Even if portions of the allegations or information alleged to

have been obtained or distributed by Defendants is shown to be inaccurate, the

rough and tumble nature of the political debate, particularly in a hotly contested

election, renders this the type of thing that a politician must expect to endure.[1]

---

[1] Defendants recognize the decision of the Eleventh Circuit Court of Appeals in <u>Bennett v. Hendrix</u>, 423 F.3d 1247 (11th Cir. 2005), and its holding that a First Amendment claim for retaliation may exist based upon actions taken by persons that are designed to inhibit a person of ordinary firmness from the exercise of First Amendment rights. However, the critical distinction that exists in <u>Bennett</u> the distinguishes it from the case law cited to herein is that in <u>Bennett</u>, the persons subject to the alleged harassment were not political candidates seeking office. Instead they were private citizens who simply sought to oppose a candidate for office and a referendum. As such, these persons did not subject themselves to the same level of investigation or scrutiny, personally or professionally, that an actual candidate for public office must

### 2.    COUNT II: CONSPIRACY:

**Plaintiff's conspiracy claim is barred by the intra-corporate bar to such claims and by the absence of a cognizable claim for the violation of any right..**

Plaintiff alleges in Count I of the amended complaint that Defendants engaged in a conspiracy.  First, having failed to alleged a cognizable claim for the violation of any right protected by the Constitution, Plaintiff cannot state a claim for conspiracy.  Plaintiff also alleges throughout the amended complaint that the actions of Defendants were taken were taken in the course and scope of their employment of each as employees of the Sheriff or that Defendants were acting as employees or in an employment relationship at all times pertinent to the claim.

In this Circuit, it is well established that a public entity and its employees are "deemed incapable of conspiring among themselves or with the corporation."  Dickerson v. Alachua County Com'n, 200 F.3d 761, 767 (11th Cir. 2000), *cert. dismissed*, 530 U.S. 1285 (2000);  Baker v. Chandler, 161 F.Supp.2d 1372 (S.D. Fla. 2001); Horne v. Russell County Comm'n., 295 F.Supp.2d 1289 (M.D. Ala. 2003).  None of the exceptions delineated in the Dickerson case are alleged or apply in this case.  The doctrine applies with equal force for police agencies and their officers as it does for corporations.  A determination that civil rights/conspiracy claims against police officers was barred by the intra-corporate conspiracy doctrine in Perez v. Miami-Dade County, 297 F3d 1255 at 1263, n 20 (11th Cir. 2002), affirming Perez v. Miami-Dade County, 348 F. Supp 2d 1343 (S.D. Fla. 2004).  The argument that police officers cannot conspire with themselves applies *a fortiori* as to Sheriff's deputies in that each is not just an employee of the law

---

expect as a part of the political process.  None of the cases cited to in Bennett involve a political candidate's efforts to achieve elective office and actions taken by the opposing candidate in response.

enforcement agency but is a true "deputy" and, in the law's eyes, each deputy is the alter-ego of the Sheriff himself. This principle is so well established in this Circuit so as to make Plaintiff's allegations in this regard frivolous and subject to sanction.

3. **COUNTS III & IV: FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL AND SUBSTANTIVE DUE PROCESS**:

**Plaintiff fails to allege sufficient facts to state a claim for the violation of any right to procedural or substantive due process under the Fourteenth Amendment to the Constitution.**

The facts alleged by Plaintiffs, even if accepted as true, fail to state a violation of any right arising under the Due Process Clause to the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiff offers no facts related to a due process claim. Plaintiff does not allege any basis for any property right or liberty interest other than reputation, alleges no facts related to what due process was available, not provided or inadequate, or any separate basis for a substantive due process claim.

There are three prongs to the Due Process Clause of the Fourteenth Amendment. First, the clause incorporates many of the specific protections defined in the Bill of Rights, thereby allowing a plaintiff to bring a suit for the violation of rights such as those guaranteed by the First Amendment's right to freedom of speech or the Fourth Amendment's right to freedom from unreasonable searches and seizures against a state or a state actor. Zinermon v. Burch, 493 U.S. 113, 125, (1990). Such actions are properly brought by alleging a violation of the specific Amendment or right allegedly violated, not by a separate due process claim.

Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." Id. Plaintiff alleges a violation of this aspect of the Due Process Clause by asserting that the actions of Defendants deprived Plaintiff of his right to run for political office under the First Amendment. However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Accordingly, any alleged First Amendment violation must be brought under the more specifically delineated First Amendment provision …" Gilder-Lucas v. Elmore County Bd. of Education, 399 F. Supp 2d 1267, 1272 (M.D.Ala. 2005). See also, Denny v. Drug Enforcement Admin., 508 F. Supp. 2d 815 (E.D. Cal. 2007); Dorman v. Castro, 214 F. Supp 2d 299 (E.D.N.Y. 2002); Harrison v. Wille, 132 F.3d 679 (11th Cir. 1998). Plaintiff brings such a claim in Count I of the amended complaint, rendering his substantive due process claim subject to dismissal.

Finally, the Due Process Clause encompasses a third type of protection, a guarantee of fair procedure. Here, the existence of state remedies is relevant to the analysis. Zinermon, 493 U.S. at 125. In a due process claim, state action depriving a person of a constitutionally protected interest in life, liberty or property, is not unconstitutional in and of itself. It only becomes unconstitutional when the deprivation is without due process of law. Parratt v. Taylor, 451 U.S. 527, 537 (1981). A constitutional

violation of this nature is actionable under Section 1983 not when the deprivation occurs, but only unless and until due process is not provided by the state. <u>Zinermon</u>, 493 U.S. at 126. Regardless of whether Plaintiffs' amended complaint is analyzed under principles applicable to substantive due process or procedural due process, the allegations are insufficient as a matter of law.

### A.    <u>PROCEDURAL DUE PROCESS</u>

In any §1983 due process case, the threshold inquiry is whether a plaintiff possesses a property or liberty interest. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972); <u>Executive 100, Inc. v. Martin Co.</u>, 922 F.2d 1536, 1541 (11th Cir. 1991), <u>cert.den.</u> 112 S.Ct. 55 (1991). As stated in <u>Behrens v. Register</u>, 422 F.3d 1255, 1259 (11th Cir, 2005):

> The initial question with any due process challenge is "whether the injury claimed by the plaintiff is within the scope of the Due Process Clause." <u>*Smith ex rel. Smith v. Siegelman,*</u> 322 F.3d 1290, 1296 (11th Cir.2003). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>*Bd. of Regents of State Colleges v. Roth,*</u> 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *see also <u>id.</u>* at 570-71, 92 S.Ct. at 2705-06 ("But, to determine whether due process requirements apply in the first place ... [w]e must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property.") (citation omitted). In this case, the central issue is whether Behrens has sufficiently alleged the deprivation of a constitutionally protected liberty or property interest, such that the procedural guarantees of the Due Process Clause have been triggered.

In the absence of proof of a protected property or liberty interest, there is no basis to go forward to the second step of the analysis in order to determine what process was due to the plaintiff and whether it was provided. In the instant case, the Plaintiff does not allege the existence of a protected property interest such as employment with the Defendant Sheriff. At the time of the events involving the Defendants, Plaintiff was not

an employee of the Sheriff and had not been for some years.  The fact that Plaintiff may have had some form of property right in his subsequent employment, which is not alleged, would have no bearing on any property interest claim as to these Defendants, as they would not be in a position to provide any due process in connection with any deprivation of a property right Plaintiff might have with some other employer.

Having failed to allege a sufficient property interest to establish a procedural due process claim, Plaintiff must try to find refuge in the "liberty" component of such a claim.  Reputation alone, apart from some more tangible interests such as employment, is neither "liberty" or "property" sufficient to invoke the procedural protection of the due process clause.  Paul v. Davis, 424 U.S. 693, 701 (1976).  Quoting again from Behrens v. Register, at page 1259 – 1260:

> The Supreme Court, however, has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 701-02, 712, 96 S.Ct. 1155, 1160-61, 1165-66, 47 L.Ed.2d 405 (1976).  The *Paul* Court "expressed concern that the Fourteenth Amendment not be interpreted so as to make it 'a font of tort law to be superimposed' upon a state whenever a state law official commits a tort." *Von Stein v. Brescher,* 904 F.2d 572, 581 (11th Cir.1990) (quoting *Paul,* 424 U.S. at 701, 96 S.Ct. at 1160).  The Court explained that, in order to invoke the procedural protections of the Due Process Clause, a plaintiff would need to establish *more* than a mere defamation claim. *Paul,* 424 U.S. at 706, 96 S.Ct. at 1163;  *see also Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) ( "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.").
>
> ***
>
> Essentially, the *Paul* Court "established what has come to be known as the 'stigma-plus' test." *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1302 (11th Cir.2001) (citing *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977)).[FN10]  Under this test, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is

entitled to invoke the procedural protections of the Due Process Clause."
*Id.* (citing *Paul,* 424 U.S. at 701-02, 96 S.Ct. at 1161).   In considering
what satisfies the "plus" prong of this analysis, the *Paul* Court looked to
whether state action had significantly altered or extinguished "a right or
status previously recognized by state law." *Paul,* 424 U.S. at 711, 96 S.Ct.
at 1165.

***

"To establish a liberty interest sufficient to implicate the fourteenth
amendment safeguards, the individual must be not only stigmatized but
also stigmatized in connection with a denial of a right or status previously
recognized under state law." *Smith,* 322 F.3d at 1296 (citation omitted)

***

Without a protected right or status, Behrens has alleged nothing more than
a defamation claim. In *Siegert,* the Supreme Court held the plaintiff failed
to establish a constitutional deprivation even though the stigmatizing
statements "would undoubtedly damage the reputation of one in his
position, and impair his future employment prospects." *Siegert,* 500 U.S.
at 234, 111 S.Ct. at 1794

Plaintiff, in his amended complaint, identifies no such interest or right the factual

allegations or in Counts III or IV of the amended complaint.  Instead, it is apparent that

the thrust of Plaintiff's amended complaint is one of damage to his reputation; i.e.

defamation as is alleged elsewhere in the amended complaint.  As such, the analysis of

Plaintiffs' Due Process Claim need proceed no further.

Even if a cognizable property or liberty interest is found to exist, a due process

violation does not necessarily follow. In analyzing due process claims, the Supreme

Court has repeatedly recognized that the existence of statutory provisions for post-

deprivation hearings or a common law tort remedy for erroneous deprivations satisfies

due process.  Parratt v. Taylor, 451 U.S. at 543-544; Hudson v. Palmer, 468 U.S. 517, at

534-535 (1984).   Thus, where there exist significant statutory and common law tort

remedies for the alleged deprivation or constitutional violation, no due process violation

will lie.   In the instant case, as is evinced by the other counts of Plaintiff's amended

complaint brought under state law, such remedies exist and provide to the Plaintiff a full range of relief.

This premise is one of the primary underpinnings of the court's opinion in McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (en banc).  In addressing the procedural due process aspect of the plaintiff's claim in that case, the McKinney court found no violation of the Due Process Clause where the plaintiff possessed adequate state remedies to address the procedural deficiencies alleged.  The court noted that the pursuit of the remedy through the state forum might well have prevented the violation of procedural rights alleged and obviated the need for the federal claim.  Id. 20 F.3d at 1561.  This is precisely the basis for the dismissal urged in the instant case.

Continuing on, the court in McKinney stated that procedural due process does not protect against the underlying violation of the right alleged to exist, instead only obliging the state to make available a means of redress for any alleged violations.  Id.  20 F.3d at 1562.  Citing to Supreme Court precedent, the court concluded that a *violation* of procedural due process rights does not occur unless and until the State of Florida refuses to make available a means to remedy the deprivation. Id. at 1563.  As a result, an available adequate remedy in the state system was found to exist, even if that remedy did not provide all the relief available in an action brought under section 1983.  Id, at 1563-1564.

As evinced by the amended complaint submitted in the instant case, Plaintiff has available to him process under Florida law providing a sufficient remedy for the procedural deprivations alleged.  By availing himself of these remedies, Plaintiff cannot assert a failure to provide procedural due process, regardless of whether the claim is

raised in the form of property interest claim, a liberty interest claim or in the form of a

substantive due process claim. Each claim is premised upon the failure to provide

procedural due process, a failure that does not occur unless and until the State of Florida

refuses to make available a means to remedy the deprivation. This refusal has not

occurred in the instant case and Plaintiff therefore has not and cannot state a claim for the

violation of his right to due process. The court must thereby dismiss this aspect of the

Plaintiffs' amended complaint.

### B. <u>SUBSTANTIVE DUE PROCESS:</u>

The caution stated by the Supreme Court must be considered as a framework for the

analysis of this claim. In <u>Albright v. Oliver</u>, *supra*, the Court refused to consider an

unlawful arrest claim in the context of Fourteenth Amendment substantive due process,

instead requiring a Fourth Amendment analysis of the claim. Although the claim in the

instant case differs, the caution of the Court applies:

> "As a general matter, the Court has always been reluctant to
> expand the concept of substantive due process because the
> guideposts for responsible decision-making in this
> unchartered area are scarce and open-ended." The
> protections of substantive due process have for the most part
> been accorded to matters relating to marriage, family,
> procreation, and the right to bodily integrity. (citations
> omitted).

<u>Id.</u> In the instant case, as in <u>Albright</u>, Plaintiff has potentially an alternative basis upon

which his claims may be considered under both federal and state law, as set forth in the

amended complaint and as discussed above. As such, Plaintiff cannot state a claim under

the substantive component of the Due Process Clause.

### 4.     QUALIFIED IMMUNITY:

Defendants McNesby, Smith and Blackburn in this case are sued only in their individual capacities.  As such, they are entitled to the defense of qualified immunity so long as their actions do not violate clearly established law.

Qualified immunity offers complete protection for governmental officials sued in their individual capacity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Vinyard v. Wilson, 311 F. 3d 1340, 1346 (11th Cir. 2002), *citing*, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The law is well established in the Eleventh Circuit that a qualified immunity defense is to be decided by the Court as a matter of law.  Stone v. Peacock, 968 F. 2d 1162 (11th Cir. 1992)[2]

The United States Supreme Court reiterated in Hope v. Pelzer that "the salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their treatment of [the plaintiff] was unconstitutional."  Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2516 (2002).  *Hope* repeated that officers sued in a section 1983 civil rights action have a "*right to fair notice*."  Hope at 2515 (emphasis added).

Hope also reaffirmed:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has

---

[2] The Supreme Court has made it clear that before addressing the qualified immunity defense, a court must first determine whether there has been a constitutional violation.  If there is no constitutional violation, there can be no need for qualified immunity.  If a violation could be made out on a favorable view of the non-moving party's' submissions, the next step is to determine whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194 (2001).  As argued above, Defendants did not violate Plaintiff's constitutional rights as it pertains to Plaintiff's arrest; therefore, this Court need not address whether a right was violated that was clearly established at the time of which Plaintiff complains.  Defendants address the question of whether a constitutional right was clearly established only in an abundance of caution.

previously been held unlawful but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id*. at 2515 (citations omitted). "If the law did not put the officer *on notice* that his conduct would be *clearly* unlawful, summary judgment based on qualified immunity is appropriate." Saucier 533 at 202 (emphasis added).

For a point of law to be clearly established, that point must be established in the jurisdiction in which the officer's conduct is being scrutinized. Jenkins v. Talladega City Board of Education, 115 F. 3d 821 (11th cir. 1997). As is discussed above, this cannot be demonstrated under the existing state of the law. Applying these standards to a qualified immunity analysis, it is apparent it cannot be said that as to a political candidate, the law was clearly established that investigating, compiling and distributing the information alleged in the amended complaint was contrary to law. As the Supreme Court stated in Monitor Patriot Co. v. Roy, supra at page 276:

> It is perhaps unavoidable that in the area of tension between the Constitution and the various state laws of defamation there will be some uncertainty as to what publications are and what are not protected. The mental element of 'knowing or reckless disregard' required under the New York Times test, for example, is not always easy of ascertainment. '**Inevitably its outer limits will be marked out through case-by-case adjudication, as is true with so many legal standards for judging concrete cases, whether the standard is provided by the Constitution, statutes, or case law**.' St. Amant v. Thompson, 390 U.S. 727, 730-731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262. (emphasis supplied)

The Eleventh Circuit has similarly recognized that its First Amendment decisions "tilt strongly in favor of immunity" and that only in the "rarest" of cases will it be found that a reasonable government official would have known that he or she violated clearly established law. Hansen v. Solden-Wagner, 19 F.3d 573, 576.[3]

---

[3] At least one other court has similarly recognized the difficulty encountered in determining the allowable range of action in such matters. In Upton v. Thompson, 930 F.2d 1209 (7th Cir. 1991), cert.den. 112 S.Ct.

It is undisputed that during the time period of which Plaintiff complains, Defendants were acting within the scope of their discretionary authority as the Sheriff or deputy sheriffs employed by the Escambia County Sheriff. Plaintiff's allegations make this clear. However, insufficient allegations are presented to show that Defendants took any actions that a reasonable person would know violated clearly established law. Accordingly, Defendants are entitled to qualified immunity from Plaintiff's constitutional claims.[4]

**5.      COUNT V: DEFAMATION:**

**a.      Plaintiff's defamation claim is barred by the absolute immunity to which Defendants are entitled and by the applicable statute of limitations.**

Count V of Plaintiff's amended complaint asserts a claim of defamation based upon the allegations of disclosure of certain information allegedly compiled during the course of a political campaign. The facts set forth in Plaintiff's amended complaint allege a series of facts that commence in 2004 and that conclude in 2005. Within the content of Plaintiff's allegations it is alleged the actions of Defendants were taken within the scope and course of

---

1262 (1992), the court addressed the consolidated appeals of former deputy sheriffs claiming their discharges were impermissibly motivated by their political party affiliations. On appeal of the district court's denial of the sheriff's qualified immunity summary judgment motion, the circuit court reversed. In dealing with the qualified immunity issue the court found "the lack of clarity on this issue, as demonstrated by the analysis below, necessarily extends the protection of qualified immunity to the sheriffs." Id. at 1213.

[4] As noted above. Defendants recognize the decision of the Eleventh Circuit Court of Appeals in Bennett v. Hendrix, supra, and its holding that the defendants in that case were not entitled to qualified immunity on a First Amendment claim for retaliation. However, in Bennett the denial of qualified immunity expressly states that it is based upon the status of the plaintiffs in that case as private citizens. As the above referenced case law makes clear, Plaintiff in this case lost his private citizen status when he chose to run for the office of Sheriff and then became subject to the same standards that govern public officials. As such, the Bennett case is of little guidance in resolving the issue of these Defendants entitlement to qualified immunity. None of the cases cited to in Bennett involve a political candidate's efforts to achieve elective office and actions taken by the opposing candidate in response.

their employment as and with the Sheriff. No other facts are alleged regarding the alleged actions of Defendants.

In order to prevail on a defamation claim a plaintiff must prove that: (1) the defendant published a false and defamatory statement about the plaintiff; (2) the statement was communicated to someone not authorized to receive it; and (3) damages were suffered as a result. 19 Fla.Jur.2d, Defamation and Privacy, §§ 77-85; Shaw v. R.J. Reynolds Tobacco Co., 818 F.Supp 1539 (M.D.Fla.1993).

However, the law is well established in Florida that even where such allegations are made, public officials possess an absolute privilege or immunity from claims of defamation for the release of information or as to any statements related to their official duties or made incidental to official duties. Resha v. Tucker, 670 So. 2d 56 (Fla. 1996); Cobb Auto Sales, Inc. v. Coleman, 353 So.2d 922 (Fla. 4th DCA 1978). Absolute privilege or immunity is not merely a defense to liability; it protects the official from having to defend the lawsuit at all. City of Miami v. Wardlow, 403 So.2d 414 (Fla. 1981); Hauser v. Urchisin, 231 So.2d 6 (Fla. 1970); Danford v. City of Rockledge, 387 So.2d 967 (Fla.5th DCA 1980); Stephens v. Goeghegan, supra; Tucker v. Resha, 634 So.2d 756 (Fla. 1st DCA 1994) aff'd 670 So.2d 56 (Fla. 1996); McNayr v. Kelly, 184 So.2d 428 (Fla.1966); Goetz v. Noble, 652 So.2d 1203 (Fla. 4th DCA 1995); Knight v. Starr, 275 So.2d 37 (Fla. 4th DCA 1973). Resolution of this question is a legal issue for the court. Resha v. Tucker, 670 So. 2d at 59

In this regard, the courts have taken a liberal approach as to what constitutes acting within the scope of one's official duties. It has been deemed to include statements made to the press, Knight v. Starr, supra and Danford v. City of Rockledge, supra; or other

governmental bodies, <u>Hauser v. Urchison</u>, <u>supra</u>; or in response to pre-employment investigations of a previous employee, <u>City of Miami v. Wardlow</u>, <u>supra</u>; or by supervisors filing reports charging a subordinate with misconduct, <u>Forman v. Murphy</u>, 501 So.2d 640 (Fla. 4th DCA 1986). This rule has also been extended to include not only the executive officer himself, but those officers acting in executive capacity or within the scope of their duties. <u>City of Miami v. Wardlow</u>, <u>supra</u>; <u>Danford v. City of Rockledge</u>, <u>supra</u>.[5]

Beyond this, from the allegations contained in Respondent's amended complaint it is specifically alleged that the defamation claim is based upon accusations and statements made by Defendants as a part of their status as the Sheriff or employees of the Sheriff. To the extent this is the case, such actions would necessarily be deemed incidental to the official duties of the persons involved and therefore subject to absolute privilege under Florida law. Certainly, if statements such as those referred to in the above cited cases are subject to absolute privilege from claims of libel, slander, or defamation, statements made by the Sheriff or his employees in connection with inquiries regarding Plaintiff's employment status are subject to this privilege as well.

In this case, Plaintiff appears to attempt to avoid the consequences of this authority by asserting the statements of the Defendants' agents were false. However, this

---

[5] To the extent Plaintiff seeks to hold the Sheriff liable for the statements or actions of his employees, Plaintiff's own allegations as well as the nature of his burden of proof preclude his ability to impose such liability upon the Sheriff, pursuant to the provisions of Section 768.28, Florida Statutes. Plaintiff, in his complaint, alleges that the actions and statements were intentional, willful and malicious and indicates his intent to seek punitive damages. Furthermore, in order to establish his claim of defamation, the Plaintiff must show that the publication was done with actual malice, knowing it was false or with reckless disregard for its truth or falsity. <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964). This is so because, as a candidate for public office, the Plaintiff is considered to be a public official. <u>See</u>, <u>Smith v. Russell</u>, 456 So.2d 462 (Fla. 1984). Moreover, pursuant to Section 768.28, Florida Statutes, the Sheriff possesses sovereign immunity for actions of employees done in bad faith, with malicious purpose, or in a willful and wanton disregard of another's rights. <u>District School Board of Lake County v. Talmadge</u>, 381 So.2d 698 (Fla. 1980). Thus, the Plaintiff cannot establish vicarious liability on his claims against the Sheriff without simultaneously establishing tort immunity of the Sheriff. <u>Ford v. Rowland</u>, 562 So.2d 731 (Fla. 5th DCA 1990).

fact does not bar the application of the defense. The absolute privilege applicable to statements made by officials of all braches of government in connection with their official duties applies no matter how false or malicious words spoken or written by an executive official of government may be. <u>Tucker v. Resha</u>, 634 So.2d at 758, citing to <u>McNayr v. Kelly</u>, <u>supra,</u> and <u>aff'd,</u> at 670 So.2d 56. Thus, regardless of if the statements are false, which is an essential element of any claim of defamation, the immunity or privilege still applies.

       **b.** **Plaintiff's defamation claim is barred by the applicable statute of limitations.**

       Florida Statutes Section 95.11 (4) (g) bars Plaintiff's claim of defamation. Under that statute, a claim for defamation must be brought within 2 years of the publication of the statement that is alleged to constitute the defamatory information. <u>Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan,</u> 629 So.2d 113 (Fla.1993). In this case, the last event alleged in Plaintiff's amended complaint that constitutes an act of defamation is found in paragraph 58 of the amended complaint and is alleged to have occurred in February of 2005. Although Plaintiff, in thinly veiled attempt to avoid the consequences of the factual allegations and the application of the statute of limitations, alleges in Count V that acts of defamation occurred in 2006, there is no event identified or alleged that occurs after 2005. Under these circumstances, Plaintiff's defamation claim is barred by the applicable statute of limitations.

**c.     Plaintiff's defamation claim is barred by rights possessed by the Defendants under the First Amendment.**

As is set forth above, the Supreme Court and other courts of this county have repeatedly recognized the right of political candidates, and others, to engage in criticism and debate regarding the qualifications of candidates for public office. Those same courts have repeatedly rejected the use of civil actions such as those for libel or slander as a vehicle to inhibit the exercise of those First Amendment rights. The same principles that have barred the actions other plaintiffs sought to pursue in the above referenced cases bar this Plaintiff's attempts to pursue this action.

## CERTIFICATE OF COMPLIANCE AS TO MOTION TO DISMISS OF DEFENDANTS RON McNESBY, LARRY SMITH AND REX BLACKBURN

Counsel for Defendants McNESBY, SMITH AND BLACKBURN has attempted to confer with Plaintiff's attorneys as required by the local rules, but has not received a response to his inquiry regarding the extent to which the issues raised in this motion can be resolved.

WHEREFORE, Defendants McNESBY, SMITH AND BLACKBURN, move for and urge dismissal of Plaintiff's amended complaint as to them and for such other relief as this Court deems appropriate, including, but not limited to, an award of attorney's fees and costs where appropriate.

Respectfully submitted on this 4th day of December 2008.

s/ Keith C. Tischler
KEITH C. TISCHLER
Florida Bar No. 0334081
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Tel:    (850) 422-0282
Fax:    (850) 422-1913

**Attorney for Defendants
McNESBY, SMITH and
BLACKBURN**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered by CM/ECF Service only to James R. Murray, 420 East Pine Avenue, Crestview, Florida 32536, Eric D. Stevenson, 105 E. Gregory Square, Pensacola, Florida 32502, and Jason W. Peterson, 125 W. Romana Street, Suite 800, Pensacola, Florida 32591 this 4th day of December 2008.

s/ Keith C. Tischler
KEITH C. TISCHLER