IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN RUSSELL POWELL,

    Plaintiff,

v.                                        Case No.: 3:08-cv-449-RV/EMT

HARRY R. MCNESBY, Sheriff
of Escambia County, Florida;
LARRY SMITH, Chief Deputy
Sheriff; REX BLACKBURN, Deputy
Sheriff; MICHAEL SWINEHART
POLITICAL, INC., a Georgia for
profit corporation registered to do
business in the State of Florida;
MICHAEL T. SWINEHART,
in his individual capacity; and
JIMMY R. CALHOON, in his individual
capacity,

    Defendants.
_____/

**ORDER**

Now pending are two motions to dismiss filed by certain of the defendants in this case (docs. 36, 37).[1]

**I.    BACKGROUND**

The following facts are taken from the amended complaint, and they are assumed true for purposes of this order.

The plaintiff, John Russell Powell, is a resident and citizen of Dothan, Alabama. The defendants are as follows: at all times relevant, Harry R. McNesby was Sheriff of

---

[1] One defendant, Jimmy R. Calhoon (identified in some of the pleadings as "Jimmy R. Cahoon"), has not filed any responsive pleading. It appears from the notice of removal (doc. 1) that he has not been located and served with process.

Escambia County, Florida; Larry Smith was the Chief Deputy Sheriff; Rex Blackburn was a deputy sheriff (collectively, the "state defendants"); Michael Swinehart Political, Inc. ("MSP"), was a Georgia for-profit corporation that contracted with and agreed to assist McNesby in his 2004 re-election campaign (discussed *infra*); Michael Swinehart was the president of MSP; and Jimmy R. Calhoon was a private investigator employed by MSP and Swinehart (collectively, the "Swinehart defendants").

The plaintiff was employed by the Escambia County Sheriff's Office between December 1983 and July 1996. He left the Sheriff's Office in 1996 to take a position as a Special Agent with the Federal Bureau of Investigation. He later became the Chief of Police in Hartsville, South Carolina, and then Chief of Police in Wilson, North Carolina, and with respect to which McNesby had given him two positive recommendations.

In 2003, the plaintiff made the decision to explore a candidacy for the Office of Sheriff in Escambia County, Florida. He was still employed as the Wilson (North Carolina) Chief of Police at the time. In May 2003, he returned to Florida to visit his father and meet with supporters. During that visit, he was informed by a member of the Escambia County Sheriff's Office that Smith had threatened to "ruin" him if he continued with his plans to run for the Office of Sheriff. McNesby, Smith, and Blackburn all agreed to create and disseminate false information about the plaintiff in an attempt to dissuade him from running, and they used their official positions to formulate and devise a plan to obtain false and derogatory information about the plaintiff in an attempt to derail his political efforts. Also, during that same visit, the plaintiff stopped by to visit with friends at the Escambia County Sheriff's Office, during which McNesby and Smith told him to leave and threatened him with arrest if he returned. They also indicated that the Wilson city officials would not be pleased if they knew he was in Escambia County exploring a candidacy for another position.

Thereafter, in June 2003, before the plaintiff made a formal announcement on his decision to run for Escambia County Sheriff, "a ranking officer" of the Sheriff's Office contacted the Assistant City Manager of Wilson, North Carolina, and told him that the plaintiff was planning to run for the Sheriff's position. The plaintiff subsequently resigned

his position as Chief of Police of Wilson, and returned to Escambia County to begin his political campaign.

During the course of the campaign, the defendants engaged in various acts of alleged misconduct, including: (1) McNesby and Smith provided a flyer (which had been obtained by Calhoon at the direction of Swinehart, MSP and McNesby) to a minority newspaper that contained false allegations that the plaintiff had purposefully eliminated supervisory positions held by minority employees while he was Police Chief in Wilson, North Carolina; (2) while at his campaign headquarters, Blackburn approached the plaintiff, threatened him, and warned him that he had better "watch out" in the future; (3) Blackburn and other officers conducted surveillance of the plaintiff and his supporters in order to intimidate and harass them; (4) McNesby and Smith contracted with MSP and Swinehart, who later contracted with Calhoon, in order to obtain derogatory and false information on the plaintiff for the purpose of smearing his candidacy; (5) Calhoon went to Hartsville, South Carolina, and falsely represented himself to be a member of Escambia County government in order to try and obtain "smut" on the plaintiff; (6) Calhoon prepared summaries of interviews with police officers which contained false information, including allegations of moral and criminal violations that were committed by the plaintiff while he was the Wilson Chief of Police (such as adultery, federal criminal law violations, unfair labor practices, and "kickbacks"); (7) these summaries were then disseminated in Escambia County by both the state and Swinehart defendants, even though they knew (after being expressly told) the statements contained therein were false[2]; and (8) an employee of the Escambia County Sheriff's Office arranged for a bouquet of flowers --- signed with "love" from the woman with whom the plaintiff was alleged to have had an affair --- to be delivered to the plaintiff's residence during the daytime when his wife was alone in the home.

The plaintiff was defeated at the general election on November 2, 2004.

---

[2] Each of the employees who were purported to have given the statements to Calhoon denied having ever accused the plaintiff of criminal or moral violations.

*Case No.: 3:08-cv-449-RV-EMT*

Subsequently, in January 2005, he applied for the Chief of Police position with the City of Dothan, Alabama. In February 2005, McNesby, Smith and Blackburn sent the false materials noted above to the Dothan City Manager and each of the City Councilman. For the next several months, the same defendants continued to send false and derogatory material to the media in Dothan, alleging that the plaintiff had committed criminal and moral violations that rendered him unfit to fill the Chief of Police position. Nevertheless, the plaintiff was hired as the Dothan Chief of Police in May 2005. After his appointment, the defendants continued to send the false materials to employees of the Dothan police department (as late as 2007) in an effort to harass and intimidate the plaintiff and dissuade him from running against McNesby in the next election. As a result of this intimidation and harassment, the plaintiff did not run for Sheriff of Escambia County in 2008.

The plaintiff filed this suit in state court, pursuant to Title 42, United States Code, Section 1983, and the case was later removed to this court on the basis of federal question jurisdiction. He alleges the following in the amended complaint: (1) a First Amendment violation; (2) civil conspiracy; (3) substantive due process; (4) procedural due process; and (5) defamation. The defendants, as noted, have now filed two motions to dismiss.

## II. STANDARD OF REVIEW

In deciding the defendants' motions, I am confined to the four corners of the complaint and must take the factual claims therein as true and view them in the light most favorable to the plaintiffs. *See Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006); *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir. 2000). The Federal Rules of Civil Procedure do not require the plaintiffs to set out in detail the facts upon which they base their claim; rather, Rule 8(a)(2) only requires a "short and plain statement" showing that the pleader is entitled to relief. Nevertheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* --- U.S. ---, 127 S. Ct. 1955, 1965,

167 L. Ed. 2d 929 (2007); *accord Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *See Watts, supra,* 495 F.3d at 1295 (quoting *Twombly,* 127 S. Ct. at 1965). This rule does not "impose a probability requirement at the pleading stage." *Twombly,* 127 S.Ct. at 1965. The test for stating a claim is whether the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts, supra,* 495 F.3d at 1296 (quoting *Twombly,* 127 S. Ct. at 1965).

### III.  DISCUSSION

The defendants raise several arguments in their motions to dismiss, all of which can be addressed rather quickly. The motions will be discussed in turn.

**A. The State Defendants' Motion (doc. 36)**

The state defendants first argue that the First Amendment claim fails to state a cause of action due to the plaintiff's status as a political candidate. The state defendants argue, in essence, that to allow the claim would infringe upon *their* rights since they themselves have a First Amendment right to make statements and take action during a political campaign. Although I agree with the defendants that courts should not be called upon to act as "campaign police" and govern the actions and statements of political candidates --- and I recognize that candidates frequently misstate and misrepresent their opponent's record --- intentional and reckless falsehoods (which are expressly alleged in this case) are not protected speech. *See generally McDonald v. Smith,* 472 U.S. 479, 484-85, 105 S. Ct. 2787, 86 L. Ed. 2d 384 (1985); *Garrison v. State of La.,* 379 U.S. 64, 75, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1965) ("the knowingly false statement and the false statement with reckless disregard of the truth, do not enjoy constitutional protection"); *accord, e.g., Colson v. Grohman,* 174 F.3d 498, 507 (5th Cir. 1999) (stating that "criticism of public officials lies at the very core of speech protected by the First Amendment, . . . [but] intentional or reckless falsehood, even political falsehood, enjoys no First Amendment protection").

*Case No.: 3:08-cv-449-RV-EMT*

The state defendants next argue that the conspiracy claim is barred by the intra-corporate conspiracy doctrine.

> The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine applies to public entities such as the City and its personnel.

*Denney v. City of Albany,* 247 F.3d 1172, 1190-1191 (11th Cir. 2001) (internal citations and quotation marks omitted); *see also Dickerson v. Alachua County Com'n,* 200 F.3d 761, 767-78 (11th Cir. 2000) (intra-corporate conspiracy doctrine is based on the legal principle that a corporation's employees --- when acting as agents of the corporation --- are viewed as a single actor and are thus incapable of conspiring among themselves or with the corporation, much the same way that "it is not possible for an individual person to conspire with himself"). However, the plaintiff's complaint contains allegations of conspiracy between two entities: the Escambia County Sheriff's Office *and* the Swinehart defendants. Therefore, the conspiracy count is not barred by the intra-corporate conspiracy doctrine. *See, e.g., McDermott v. Brevard County Sheriff's Office,* 2007 WL 788377, at *4 (M.D. Fla. Mar. 14, 2007) (holding same).

With respect to the claim for substantive due process, the state defendants understand the plaintiff to be arguing that he is entitled to relief because he was denied "his right to run for political office under the First Amendment." Quoting *Albright v. Oliver,* 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), the defendants contend that the claim fails because "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 273. In other words, according to the state defendants, this count must be dismissed since the plaintiff has a claim under the First Amendment. However, *Albright* further noted that while the

Supreme Court "has always been reluctant to expand the concept of substantive due process," the doctrine reaches and protects "matters relating to marriage, family, procreation, and the right to bodily integrity." *See id.* at 272. The plaintiff has also alleged that, as a part of their politically-related conduct, the state defendants invaded the protected sphere of his marriage when they arranged for the purchase and delivery of flowers to his wife that purported to be from the woman with whom he was alleged to have had an extramarital affair. This may implicate both the public integrity aspect of substantive due process and the private family rights that extend beyond a pure First Amendment claim. Substantive due process is not an appropriate claim unless it "shocks the conscience," but at this point, the allegations may "plausibly" be construed to make such a claim.

The state defendants next argue that the plaintiff has failed to state a claim with respect to procedural due process. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *see also id.* at 570-71 ("to determine whether due process requirements apply in the first place . . . [w]e must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property"). It is true, as the state defendants contend, that injury to reputation, by itself, does not constitute deprivation of liberty or property protected under the Fourteenth Amendment. Rather, to establish a violation of procedural due process in such a situation the plaintiff must satisfy the "stigma-plus test." Under this test, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Behrens v. Regier,* 422 F.3d 1255, 1260 (11th Cir. 2005). Here, the plaintiff has indeed alleged the violation of a "more tangible interest;" specifically, his right to run for public office without having a government incumbent engage in a campaign of "known lies" to derail his campaign, to try and negatively impact his marriage, and distribute "known lies" to prospective

*Case No.: 3:08-cv-449-RV-EMT*

employers after the campaign has ended in an effort to decrease his employment opportunities. Taking the facts alleged in the complaint to be true, the "stigma-plus test" has been satisfied.

Lastly, the state defendants argue that the defamation count is due to be dismissed because it is barred by (1) the doctrine of "absolute privilege," which applies to actions taken in furtherance of, or incidental to, official duties; (2) the applicable statute of limitations; and (3) the rights possessed by the defendants under the First Amendment. For the reasons already discussed, grounds (1) and (3) are unpersuasive. The defendants clearly do not have an absolute privilege, nor the right under the First Amendment, to engage in a campaign of "known lies" and intrude upon the plaintiff's marriage in order to win an election, as is alleged in the complaint. With respect to the remaining argument, the statute of limitations for a claim of libel or slander in Florida is 2 years. *See* Fla. Stat. § 95.11(4)(g). This action was originally filed in state court on August 28, 2008. Although certain of the allegations in the complaint appear to fall outside the statute of limitations, the complaint alleges sufficient facts to demonstrate that some of the complained-of conduct occurred within the applicable time period. *See, e.g.,* Complaint at ¶¶ 60, 61 and 92 (alleging that the state defendants took various actions after the 2004 election in order to dissuade the plaintiff from running in 2008, including the publishing of false and defamatory statements in the latter part of 2006 and 2007).

The state defendants' motion to dismiss on the basis of the statute of limitations, and all other grounds, must be denied.[3]

## B. The Swinehart Defendants' Motion (doc. 37)

The Swinehart defendants move to dismiss the complaint on three grounds. They first argue that they cannot be liable under Section 1983 because "Michael T. Swinehart

---

[3] The state defendants also argue that they are entitled to qualified immunity. This argument is rejected without discussion because, assuming the facts in the complaint to be true, the state defendants unquestionably had "fair warning" that under well-established law their conduct was unlawful and unconstitutional.

is a private individual and his company Michael Swinehart Political, Inc. Is a private corporation," and, consequently, they are not "state actors." However,

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks,* 449 U.S. 24, 27-28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980). Because the complaint alleges that the Swinehart defendants were jointly engaged with the state defendants in the challenged action, the plaintiff has stated a claim.

The Swinehart defendants next argue that the plaintiff has failed to allege sufficient facts to implicate them in any alleged Section 1983 violation. I disagree. The plaintiff has alleged in his complaint that the Swinehart defendants conspired to violate his First Amendment rights by, *inter alia*, preparing and distributing interview summaries which contained allegations that the plaintiff had engaged in moral and criminal violations. The complaint further alleges that these interview summaries were known to be false at the time and that the interviewees had not said what was attributed to them. This is sufficient to state a claim under Section 1983. *See, e.g., Bennett v. Hendrix,* 423 F.3d 1247 (11th Cir. 2005) (sheriff and deputies were alleged to have retaliated against plaintiffs for exercising their First Amendment rights by distributing flyers calling them "real criminals;" in affirming the district court's denial of summary judgment in favor of defendants, Court of Appeals stated that it is "settled law" that government officials "may not retaliate against citizens for the exercise of First Amendment rights").[4]

Finally, citing to *Dickerson, supra,* 200 F.3d at 761, which was also cited to and

---

[4] The defendants recognize that the *Bennett* decision holds that a claim for retaliation may exist based upon actions designed to inhibit a person from exercising his First Amendment rights. But, the defendants attempt to distinguish the case because the plaintiffs there were private citizens and not political candidates seeking office. As noted above, however, retaliation in the form of intentional and reckless falsehoods (even when alleged against political candidates) is not protected conduct.

*Case No.: 3:08-cv-449-RV-EMT*

relied on by the state defendants, the Swinehart defendants allege that they cannot be members of a conspiracy under the intra-corporate conspiracy doctrine. That argument is rejected for the same reasons previously set out.

## IV.    CONCLUSION

For the reasons stated above, the defendants' motions to dismiss (docs. 36, 37) must be, and are, DENIED.

DONE and ORDERED this 20th day of January, 2009.

/S/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge