UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN RUSSELL POWELL,
    Plaintiff,

Vs.                              Case No: 3:08-CV-00449

**MICHAEL SWINEHART POLITICAL, INC.**, a Georgia for profit corporation registered to do business in the State of Florida, **MICHAEL T. SWINEHART**, in his individual capacity; and **JIMMY R. CALHOON**, in his individual capacity.
    Defendants
_____/

## SWORN AFFIDAVIT OF TERESA JO ADAMS

Your affiant is Teresa Jo Adams, also known as Terry Adams, who during September of 2004 was a sworn police officer with the Wilson Police Department in Wilson, North Carolina. Your affiant was a supervisor with the Wilson Police Department and held the rank of Lieutenant. Your affiant has 29 years of law enforcement experience.

I know the Plaintiff, John Powell, and worked for him during his tenure as Chief of Police of the Wilson Police Department.

On/about September 15th, 2004, I was directed by the then Chief of Police, Harry Tyson, to report to his office to make contact with a person who represented himself as a former FBI agent who

1

000215

was doing a background check on John Powell for Escambia County, Florida. This former FBI agent identified himself to me as Jim Calhoon. My initial belief based upon Calhoon's representations was that he was working for Escambia County, Florida.

Calhoon began interviewing me concerning John Powell and from the tenor of the questions was asking me to confirm or deny information which I believed he had already obtained from another source.

I immediately became concerned from the tenor of the interview that Calhoon was not conducting the interview pursuant to a background investigation. Following the interview, I immediately reported my concerns to Chief Tyson and advised him that he should contact the City Attorney for Wilson, North Carolina.

Calhoon represented that he would allow me to review my responses to his questions before they were submitted to Escambia County, Florida. I became aware that Calhoon had prepared and distributed an interview summary of the information that I was alleged to have given him. That interview summary is attached as Exhibit "A" to this affidavit which is hereby incorporated into and made a part of

this affidavit. I was never provided an opportunity to review the interview summary prior to its distribution.

Upon reviewing the interview summary, I immediately contacted Chief Tyson and informed him that the interview summary was a gross mischaracterization and inaccurate summary of the answers that I had given to Calhoon's questions.

At the time that I reviewed the interview summary on October 28, 2004, I was aware that Calhoon was connected with Swinehart Political Consultants in Florida. I immediately wrote a letter to Michael Swinehart informing him of the inaccuracy of the interview summary. A copy of that letter is attached as Exhibit "B" which is hereby incorporated into and made a part of this affidavit.

The letter described above that I sent to Michael Swinehart was sent certified mail/return receipt requested. A copy of the U.S. Post Office acceptance and delivery of the letter to include the dates of acceptance and delivery is attached as Exhibit "C" which is hereby incorporated into and made a part of this affidavit.

000217

Done this 17th day of August, 2009 in Wayne County, North Carolina.

*Teresa Jo Adams*
Teresa Jo Adams

Teresa Jo Adams appeared before me this 17 day of August, 2009 with identification and swore/affirmed that the above statement is true and correct.

*Jane P. Thomas*
Notary Public

My commission expires: June 11, 2013

September 15, 2004
Wilson, North Carolina

### TERRY ADAMS

Terry Adams, Lieutenant in charge of support services, Wilson Police Department, telephone number (252) 399-2323, advised as follows:

She has 27 years of experience as any Officer with the Wilson Police Department. In approximately October 2001, John Russell Powell became Chief of Wilson Police Department. At this time, she worked under Major Billy White. Early on, she did not have a lot of interaction with Powell. However, in her opinion, Powell made decisions she did not agree with, causing her to question his ability to effectively run the Department:

1) The hiring of Desiree Dampier, a student at Barton College in the Criminology Department, where Powell was an instructor. Dampier applied for a part time position at Wilson Police Department. She was a former striptease dancer in Raleigh, North Carolina. Adams feels the Department should not have hired someone with that background. Also, an Internal Affairs Investigation was conducted into an allegation that Powell and Dampier were having an affair. The investigation never proved the allegation; however, officers observed Dampier going into Powell's office many nights at 5:00 p.m. after the secretaries went home, and staying in Powell's office behind closed doors until 6:00 p.m. and later. Then, Powell and Dampier would leave together. The entire Department was aware of this behavior. Since Dampier was under Adams' charge and supervision, she boldly approached Powell and asked him why Dampier was in his office all the time, behind closed doors. Powell told her Dampier was "working drugs." Dampier always dressed like a "hooker," and Adams did determine that Dampier had in fact

000219    Exhibit "A"

been assigned to work under Reggie Branch in the Drug Unit. It is common for the Drug Unit to use "new hires" for drug buys, since the drug dealers do not know them.

2) The Department had a minister named Reverend Suggs, who Powell designated as Police Chaplain. Suggs was a black minister. Powell gave Suggs an office in the Department. They are a small department anyway, and Adams did not feel that Suggs should have an office, taking up needed space that should have been used for official police business. Powell gave Suggs a computer, a uniform, and a telephone. Adams didn't feel this was a good decision on Powell's part, and she told Powell how she felt. Powell did not accept her view that Suggs was taking up valuable office space.

3) Powell placed captains and detectives on four-day workweeks working ten hours on each shift. Shifts were staggered, but if someone was ever sick, it put a terrible strain on manpower concerns. Adams did not agree with this arrangement, and told Powell her opinion.

4) Jimmy Tant, a former Chief Deputy for Wilson County Sheriff's Office, retired and went to work for Century Uniform Company. The Department had always done business with American Uniform Company. When Powell became Chief, he ordered that the Department would do business with Century Uniform Company and Jimmy Tant. Powell went on vacations with his wife to someplace like Key West, Florida. There was an accusation that Powell's vacation was paid for by Jimmy Tant and Century Uniforms, although she does not know that much about it. She does know that it is Departmental Policy that employees cannot accept gratuities from vendors. Kendra Powell can advise about uniforms ordered immediately prior to Powell's leaving. Kendra is in charge of ordering uniforms.

5) Powell's wife, who worked for Wilson County Sheriff's Office, made a derogatory remark about the City Manager, Ed Wyatt, and an Internal Affairs Investigation was

conducted. Powell's wife allegedly said Wyatt was a "nutless, gutless wonder." Powell's wife denied her remark when interviewed. Burt Garris, a Sergeant to whom she made the remark, stood by his allegation. Garris was suspended without pay for misconduct in service.

6) The City Attorney received a letter from former Captain Phil Baggett's attorney, putting the City, and Powell, on notice of intention to sue for wrongful termination by Powell. Phil Baggett was an outstanding Police Captain with an exemplary record, and reputation.

END

October, 28, 2004

Mr. Michael Swinehart
President, Swinehart Consulting Company
632 Silvershore Drive
Pensacola, Florida 32507

Dear Mr. Swinehart:

On September 15, 2004, I was interviewed at the Wilson Police Department by someone named Jim Calhoon (Cahoon). Mr. Calhoon stated that he was a former FBI agent and that he had been hired by your company to do a background check on former Chief John Powell for the County of Escambia, Florida. I have since learned that Mr. Calhoon was actually working for the re-election campaign of the Sheriff of Escambia County, and not the County itself. It is my understanding that Mr. Calhoon made the same misrepresentation to other officers interviewed.

I received a copy of my interview summary this morning. Upon review of the summary, I found several statements that were taken out of context and statements that were added that I did not say. The summary is a gross mischaracterization and misrepresentation of the interview. I am dismayed that your company would employ someone who would misrepresent himself and my statements in such a dishonest and underhanded manner. Like many of us who live outside the state of Florida, incidents like this one only serve to confirm the already tarnished reputation of your state in the political arena. I truly hope that this incident is not indicative of the way your company does business.

I have been a police officer for twenty-seven years, serving under five police chiefs. Contrary to what is reported in my interview summary, I never questioned Chief Powell's ability to effectively run the Wilson Police Department.


Lieutenant Terry Adams
Wilson Police Department
Wilson, North Carolina


Exhibit "B"

000222



COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Charl Swinehart
t/ Swinehart Consulting Co.
Silvershore Drive
Cola, Florida 32561

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X

B. Received by (Printed Name)

D. Is delivery address different from item 1?
If YES, enter delivery address below:

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)

2. Article Number (Transfer from service label)
7002 0860 0001 6481 0206

PS Form 3811, August 2001    Domestic Return Receipt

Exhibit "C"

000223