**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

JOHN RUSSELL POWELL,

       Plaintiff,

       v.                        Case No.: 3:08-cv-449-RV/EMT

HARRY R. MCNESBY, Sheriff of
Escambia County, Florida; et al,

       Defendants.

_____/

## ORDER

Now pending are motions for summary judgment filed by defendants Michael Swinehart Political, Inc. ("MSP") and Michael Swinehart ("Swinehart defendants"), and Jimmy R. Calhoon (collectively, the "private defendants") (docs. 119, 138). Plaintiff, John Russell Powell, has filed responses in opposition to these motions.

## I.   BACKGROUND

The factual claims underlying this case are fully set forth in my prior order denying the defendants' motions to dismiss (doc. 53), and they are incorporated herein. For purposes of this order, the pertinent facts can be restated briefly.

In November 2004, the plaintiff ran for the Office of Sheriff of Escambia County, Florida. He was defeated in that election by Harry R. McNesby, and he contends that McNesby (in concert with other individuals) engaged in various acts of misconduct, including disseminating false and derogatory information about him and his fitness for office, and trying to damage both his professional and personal relationships. Several years after the election, in or about September 2008, the plaintiff filed a civil rights complaint against McNesby; Chief Deputy Sheriff Larry Smith; and Deputy Sheriff Rex Blackburn (the "state defendants"). He also named

as defendants Swinehart and MSP (McNesby's campaign advisor and consultant) and Calhoon (a private investigator hired by Swinehart).

As for the claims against the private defendants, the plaintiff contends that the Swinehart defendants hired Calhoon to conduct a background investigation on the plaintiff and to verify some anonymous negative information about him that McNesby had obtained. The plaintiff claims that the private defendants wanted to "obtain negative facts that could be used in McNesby's re-election campaign." He further claims that Calhoon met with and interviewed various individuals during the course of his investigation, and he created interview summaries of those meetings. According to plaintiff, Calhoon mostly interviewed people who had negative things to say about him because "the obvious motivation of Calhoon was to locate only derogatory information concerning the plaintiff."[1] After his investigation, Calhoon gave the interview summaries to the Swinehart defendants, who in turn gave them to McNesby. McNesby and his agents then distributed the information contained in those interview summaries.[2]

The plaintiff filed this case in state court under Title 42, United States Code, Section 1983, and the case was subsequently removed to this court. He alleged the following causes of action in the operative complaint: (1) a First Amendment violation; (2) civil conspiracy to violate the First and Fourteenth Amendments; (3)

_____

[1] The plaintiff contends that one interview subject, Police Chief Tim Kemp, gave him a "positive recommendation," but Calhoon did not create an interview summary for Chief Kemp.

[2] The plaintiff claims that MSP was on notice that one or more of the claims in the interview summaries were inaccurate before McNesby distributed them, but it took no action to convey that information to McNesby or his staff. However, according to the evidence that plaintiff cites for this claim (Swinehart's deposition), MSP learned that some of the interview summary content might be inaccurate only after the summaries were given to McNesby, and only after McNesby or his agents had already distributed the information derived therefrom.

*Case No.: 3:08-cv-449-RV-EMT*

substantive due process; (4) procedural due process; and (5) defamation. The plaintiff has voluntarily dismissed with prejudice all the claims against the state defendants, and the private defendants now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c); accord Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); accord Equity Investment Partners, LP v. Lenz. 594 F.3d 1338, 1345 (11th Cir. 2010).

Summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Allen v. Board of Public Educ. for Bibb County, 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find in favor of the non-moving party. Id. On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the non-moving party. Reeves, supra, 594 F.3d at 807; National Fire Ins. Co. of Hartford v. Fortune Construction Co., 320 F.3d 1260, 1267 (11th

Cir. 2003). Thus, all factual disputes that are supported by "sufficient, competent evidence" must resolved in favor of the non-movant. See Pace v. Capobianco, 283 F.3d 1275, 1276 (11th Cir. 2002).

## III.    DISCUSSION

Under Section 1983, a person has a cause of action against "[e]very person who, under color of statute, ordinance, regulation, custom, or usage of any State," subjects a citizen to a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws." To maintain a claim under Section 1983, a plaintiff must show that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) (emphasis added) (citation omitted).

As noted, the state defendants have been dismissed from this case, leaving only the private defendants. The claims applicable to them in the complaint are the First Amendment claim (count 1) and the civil conspiracy claim under the First and Fourteenth Amendments (count 2). The main question raised on summary judgment is whether there is an adequate basis to hold the private defendants liable as state actors on these claims. The Supreme Court of the United States has explained:

> [T]o act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980)

*Case No.: 3:08-cv-449-RV-EMT*

(emphasis added). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). The Eleventh Circuit has recognized three general "tests" by which a private person may be deemed a state actor: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. Id.; see also Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001). The parties agree that the public function test does not apply to the facts of this case. Therefore, the issue narrows down to whether the state compulsion test or the nexus/joint action test applies in order to make the private defendants potentially liable as state actors under Section 1983.

The state compulsion test applies where "the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." Nat'l Broadcasting Co., Inc. (NBC) v. Communications Workers of Am., AFL-CIO, 860 F.2d 1022, 1026 (11th Cir. 1988) (emphasis added). Similarly, the nexus/joint action test applies where "the state contractually requires the private actor to take particular actions" to such an extent that the private actor is "acting in accordance with the governmental directive . . . [as] merely a surrogate for the state." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1278-79 (11th Cir. 2003); id. at 1279 (state action found where there was "record evidence that the state itself unmistakably directed the private actor to take particular actions"). As the Eleventh Circuit has recognized:

> If a thread of commonality is to be drawn from the various forms in which state action can manifest itself through the conduct of private parties, it is that attribution is not fair when bottomed solely on a generalized relation with the state. Rather, private conduct is fairly attributable only when the state has some affirmative role, albeit one of encouragement short of compulsion, in the particular conduct underlying a claimant's civil rights grievance.' . . .  While specifically

> the [Supreme Court has spoken] of holding the state
> liable pursuant to state action doctrine, the standard
> remains constant when a party seeks to hold a private
> actor liable under the state action doctrine.

Langston By and Through Langston v. ACT, 890 F.2d 380, 384 (11th Cir. 1989)

(citation omitted) (emphasis added). In other words, there must be evidence that

the state specifically coerced or directed the private parties to take the particular

actions that are alleged to have violated the laws or constitution.

The plaintiff claims in opposition to the defendants' motions for summary

judgment, as he does in his complaint, that the state (i.e., Sheriff McNesby)

"encouraged the Defendants to obtain derogatory and false information to smear

the Plaintiff during the campaign" and engage in the other misconduct alleged in

this case. The creation and intentional spreading of lies is indeed actionable. As I

explained in my order denying the defendants' motions to dismiss, intentional and

reckless falsehoods are not protected under the law. See McDonald v. Smith, 472

U.S. 479, 484-85, 105 S. Ct. 2787, 86 L. Ed. 2d 384 (1985); Garrison v. State of

La., 379 U.S. 64, 75, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964) (. . ."the knowingly

false statement and the false statement with reckless disregard of the truth, do not

enjoy constitutional protection"); accord Colson v. Grohman, 174 F.3d 498, 507

(5th Cir. 1999) (explaining that "criticism of public officials lies at the very core of

speech protected by the First Amendment, [but] intentional or reckless falsehood,

even political falsehood, enjoys no First Amendment protection").

However, the plaintiff has not identified any admissible evidence in the

record to support the conclusion that the state defendants either "significantly

encouraged" or "unmistakably directed" the private defendants to violate the

constitution by creating and spreading intentional falsehoods, or otherwise engage

*Case No.: 3:08-cv-449-RV-EMT*

in unlawful behavior.[3] To the contrary, plaintiff conceded at deposition that he has no evidence that the Swinehart defendants agreed and conspired with the state defendants to create and disseminate the allegedly false information, and, in turn, he conceded that he has "[no] information to suggest that Swinehart [or anyone at MSP] told Calhoon to go out and obtain false information regarding Mr. Powell." Further, he has acknowledged that he does not have evidence that the Swinehart defendants and Calhoon disseminated the allegedly false information themselves (other than providing the interview summaries to McNesby).[4]

In sum, apart from the allegations in his complaint, the plaintiff has not identified any <u>evidence</u> in the record that the private defendants were specifically directed by, or conspired with, the state defendants to violate the plaintiff's rights. Because there is insufficient evidence to hold them liable as state actors under the state compulsion or nexus/joint action test, the plaintiff has no viable claim against the private defendants under Section 1983. Summary judgment is thus appropriate. See, e.g., Rayburn, supra, 241 F.3d at 1347 (holding that because Section 1983 "only provides for claims to redress to state action," dismissal is appropriate once the court concludes that there is no state action).

## IV.  CONCLUSION

For these reasons, the defendants' motions for summary judgment (docs. 119, 138) are GRANTED. The Clerk shall enter judgment in favor of defendants

---

[3] Hiring a campaign advisor and private investigator to "obtain negative facts that could be used" against an opponent during a political campaign --- even if the advisor and investigator seek out negative facts while ignoring "positive" ones --- obviously does not qualify. For better or worse, that is merely the nature of politics. In this context, there is a clear difference between seeking out "negative facts" on the one hand, and creating and disseminating "intentional falsehoods" on the other.

[4] The plaintiff states in his opposition to summary judgment that the alleged falsehoods were, in fact, "distributed by McNesby or his agents."

*Case No.: 3:08-cv-449-RV-EMT*

Michael Swinehart Political, Inc., Michael Swinehart, and Jimmy R. Calhoon, together with taxable costs, and close this case.

DONE and ORDERED this 8th day of April, 2010.

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge